Should we start off by asking if anybody concedes the and denying our motion for summary judgment in connection with the reinsurance treaty? The appeal involves the interpretation of a specific warranty in the reinsurance treaty dealing with employer's liability and specifically the meaning of three words in that warranty. The words or so deemed and I'll refer to that as the deemer clause. Basically my client's predecessor had entered into a reinsurance treaty where it reinsured workers' compensation policies that were issued by Princeton. Policies had two types of coverage, statutory workers' compensation coverage and something called employer's liability. Employer's liability is basically the employer's liability for bodily injuries to an employee that's not covered by workers' comp. The treaty in this particular case had a total limit of 1.5 million and it attached over $1 million which means that Princeton had to sustain $1 million of loss covered by the treaty within the coverage of the treaty before Converion's reinsurance obligation attached. The warranty at issue in this case provided and I'm quoting, Princeton, quote, warrants that the maximum employer's liability limits are as follows or so deemed. That's Article 5, right? Yes, Your Honor. And originally that amount was set at $100,000 and later on it was increased to $500,000. When the treaty was first entered into it just covered policies issued in New Jersey. Over a few years at Princeton's request additional states were added. The last state that was added was New York and New York was a little different than the other ones because in New York it was unlawful for a primary workers' compensation carrier to limit its employer's liability. That was something that was not true in the other states. So in your interpretation even if the loss exceeds $500,000 you have to deem it to be? Unlimited. In New York it is unlawful to limit the carrier's employment liability, the primary carrier, Judge. Now isn't that something Converium knew before Princeton started writing New York coverage? We did. But you didn't do anything about it. We didn't, it didn't matter to us because our employer's liability coverage in our treaty was limited to $500,000 and there's case law that says that's perfectly fine. It's only the primary insurer on the policy who can't limit his employer's liability exposure. Well if it's limited but obviously district court, you know, didn't read the warranty that way, right? That's correct, Judge. The district court completed and read the warranty. Now what's wrong with the way the district court interpreted a contract in the sense that this is, well, this is a warranty? I would say, Judge, that she made, the court made three mistakes. The first mistake was it viewed the warranty as something that you either complied with or you didn't comply with. And in fact, that's not the case. The district court thought that it prevented Princeton from issuing a policy with employer's liability of more than $500,000. But in fact, that's not so. The or so deemed language makes that clear. You wouldn't need the or so deemed language if in fact it was an ironclad bar on issuing a policy with a greater limit. The second thing is that having found it to be a black and white test, did you comply with the warranty or not, the court ruled that because this policy did have a limit of $100,000, albeit a limit that was unenforceable and illegal, but because it had that limit on it, it complied with the warranty. And then the court reached the paradoxical conclusion that I think elevates form over substance, that because it complied by having this $100,000 limit, which was unenforceable, it could then cede as much employer's liability loss as it wanted to the treaty. And in fact, what the court actually does is permit $2.3 million of employer's liability loss to be ceded to this treaty. The third mistake the court made was it completely ignored the effect of the or so deemed language. But what's interesting is Princeton makes a very significant concession in its papers, which I think is dispositive on this appeal. Princeton admits at page 16 that, quote, the effect or operation... Did you say page 16, the brief on appeal or some document in district court? Appellate brief. Okay, go ahead. That quote, the effect or operation of the Deamer Clause would be that if Princeton issued a policy with an employer's liability limit of, for example, $1 million, it would be construed or deemed to be $500,000. Well, if Princeton concedes that the EL loss is deemed limited to $500,000, if they violate the warranty by issuing a policy with a stated limit of $1 million, why shouldn't the same result obtained with the issue of policy with, in effect, unlimited liability? Well, now, Article III seems to... I understand your argument about the Deamer Clause, but Article III seems to describe some of the features that policies written by Princeton have to have. Subject to the warranties, the underwriting guidelines. I guess their argument is that these warranties apply to the policies that they write. It's not a sort of limit to the policy, as you say. Your treaty, rather. One follows the other like night follows day. An insurer is only liable up to the limit of its policy absent something like bad faith. If the policy limit is deemed to be $500,000, a fortiori, only that amount of loss can be passed up to the reinsurer. If Article III deals with the features of policies Princeton writes, Article V deals with the warranties about those policies that are written, you're saying it's more than that. You're saying that this has to do with how you're liable. I'm saying that because the policy has to be deemed limited to $500,000 of employer's liability, not more than $500,000 of employer's liability can be passed over to the reinsurer. Well, what circumstances would that million dollar threshold kick in? If it's always limited to $500,000, your reinsurance only begins once there is over a million dollars threshold. Sure, it is very common, as in this particular case, that there would be both a workers' compensation claim and an employer's liability claim. But you know that workers' compensation claims are typically very low. And here, it was a massive injury that resulted in $250,000 workers' comp. So the impression I get is that this threshold for which Princeton is paying reinsurance premium is almost never going to kick in. That's not true at all, Judge. All right, well, you can help me understand it a little bit better. Because the workers' compensation benefits include medical, okay? And in this particular case, I think this worker had over $200,000 of medical expenses in addition to, I think it was a $40,000 income award. So the point is, is that with medical expenses being what they are, a serious injury could very easily trigger more than half a million of medical expenses and loss of income. That's what this was, a very serious injury. It was, Judge. And the total was $240,000. That's correct, Judge. So the total allotted to the threshold is so far $750,000. And that's why the order has to be reversed and summary judgment should be entered for my client. Of course, it's $500,000 per accident, is it? Yes, Your Honor. I wanted to save four minutes for rebuttal. I think I have two minutes left. So I'll conclude my opening presentation at this point. Thank you, Mr. Novak. Mr. McGrath. Thank you, Your Honor. May it please the Court, William McGrath, Smith Stratton Wise here in Brennan on behalf of Princeton Insurance Company. Is Mr. Novak's interpretation or reading of the treaty completely unreasonable? It is unreasonable, Your Honor. I understand where Mr. Novak comes out on this. You have, as Judge Cooper noted in her, I thought, very comprehensive opinion, an observation that a warranty in a contract of insurance or in any contract for that matter is something that obliges the promisor, in this case Princeton, to undertake certain obligations. The warranty obligates us, in accordance with its explicit terms, to issue policies that contain limits of employer's liability not to exceed $500,000. Does it have to be limits that are legal under the law? According to her answer, no. It doesn't seem to me to make a lot of sense. Well, actually, I think it does, Judge, for this reason. There is, in everyday litigation throughout this circuit and every place else, there are instances where insurers, and I've been representing them for probably 30 years, where insurers wind up paying more than the limit of their policy. There are instances, for example, where you might have a liability claim and a $100,000 limit, and the insurance company might adjust that claim in such a fashion and decline the opportunity to settle that case and wind up with an excess verdict, excess over the limit of its policy. In certain instances, in New Jersey, with which I'm most familiar, you might have a Roper Farms situation where the insurer might now be responsible for an amount in excess of the policy. Well, they certainly didn't anticipate when they wrote that policy that they would pay more than their limit, nor did we in this circumstance. But in that case, from a reinsurance perspective, hypothetically, of course, if the reinsurer agreed to pay ultimate net loss of that liability carrier and it wound up with a million-dollar verdict, as long as it was otherwise within the limit of that reinsurance treaty, the reinsurer would have to pay that amount. So this happens, unfortunately, with some frequency. This case is truly sui generis. I do not expect that you will see one of these come up again. Obviously, none of the attorneys found one that had ever come up before. But we do what we can. And I think there's a question to Mr. Novak with respect to Converium's knowledge of New York law when they agreed through negotiation back and forth to amend the treaty to include New York as a covered jurisdiction. They had that knowledge. They've conceded that. That's a stipulated fact. If they were very concerned about the interpretation that they advance here, which is we can only cede $500,000 to the Treaty for Employers' Liability, they had every opportunity to say, before we agree that New York will be covered, we're going to amend ultimate net loss because that's the provision in the treaty that governs how much they pay. But why shouldn't you be restricted to the $500,000 amount given that it was your own agent? It was Princeton who essentially drafted the contract. Judge, I'm actually glad that you asked that question. This is a point that has been made by Converium below and before this Court that our agent or our broker assembled the treaty. Paul Curtis was a reinsurance intermediary who followed the terms and conditions the general form of underlying reinsurance that was issued by American Re. There was some back and forth and ultimately this reinsurance treaty was put together. Converium has argued the doctrine of contra preferentum ought to result in any ambiguity in this particular provision being construed against us because our broker assembled the contract. What they failed to recognize is that the particular language with which Mr. Novak opened, three words, or so deemed, is their language. That is language that was insisted upon by Converium, not by our broker, by Converium and specifically by Converium's contract attorney who said that language has to go in the treaty. That was included there. So for Converium to now sit back and say any ambiguity in this ought to be construed against Princeton I think is not terribly far off the child who kills his parents and then claims the benefit of mercy or asks for mercy before the Court because he's an orphan. It's their language that they now want to construe against us. Did Judge Cooper make any findings on that? No, right? She did not because she found that the warranty was clear and unambiguous and I think her conclusion on that bears mentioning even though it's obviously in numerous places in the briefs and obviously in her opinion. What she said is that the employer's liability limit, the $500,000 limit, unambiguously requires that Princeton issue policies with a limit for employer's liability that does not exceed that amount. She also concluded that unambiguously ultimate net loss which is the provision in this contract that governs how much they pay for loss that we sustain is unambiguous and unaffected by a warranty that is included elsewhere in the contract. Well, I'm interested in finding out what your position on the Deamer Clause is. The Deamer Clause, Your Honor, one of the things that Converium makes mention of in both their initial brief and their reply is if this contract is not interpreted in accordance with the construction they urge here that the or so deemed has no application. Well, the or so deemed language has no application in this case. There isn't a requirement in contract law that every provision in the contract have some application to the particular facts that were presented with. Here, we have a case where the or so deemed language does not apply. But I understand that, but what does it mean? I mean, it's there. Let's assume it's not this case. It's another case. What does this mean? What it means, Your Honor, Judge Cooper noted this in her opinion. If Princeton has an insured that it has placed some value on and it decides it wants to write a limit because the insured insists on it that is greater than the warranty amount. Princeton then has a decision to make. Does it write that limit knowing that it will do so without the ability to bill that amount to the treaty or does it say I'm restricted by this? Mr. Novak is actually right. He comments here and has in the past that there are instances or that the operation of this provision of the warranty is such that Princeton could write a limit  I think what the Deamer Clause does, Judge, is it imposes a remedy for breach because breach... Think about this. Warranty... If Princeton writes a policy that is in excess of $500,000, your view is that the Deamer Clause brings it back to $500,000? Yes, Judge. Yes. All right. What about Mr. Novak's position that if the policy contains no limit it will be deemed to be $500,000? Why isn't that reasonable? The limit of this policy beyond any dispute printed on the declarations page was $100,000. Only by operation of New York law does Princeton wind up unable to enforce the explicit terms of its agreement. And in this respect it is very analogous to what I described earlier in an extra contractual circumstance where an insurer may think that their $100,000 limit or $500,000 limit in a bad accident case, for example, might be the extent of their exposure. But it isn't always. We can't account... Is that accounted for in the contract? I understand that's the practice. And I understand New Jersey law is well on this point. But is that covered here in the contract somewhere? Yeah. This particular circumstance, Judge? Well, no. If you've got a circumstance where you wrote a $100,000 policy and the liability actually... What Princeton is going to write a check for is $300,000. Is that covered in here? Is that part of ultimate net law? I believe, Judge, that the place you would look is ultimate net loss, which makes no reference anywhere to other provisions of the policy that would somehow restrict... The bottom line here is Converium has superior knowledge. They concede that. They are headquartered in New York at the time they agreed through negotiation to add New York as a covered jurisdiction under the Reinsurance Treaty. They wind up agreeing and not amending, not insisting on an amendment to that treaty or to their language that would have done... that would have resolved this case in the manner they seek right now. They could have gone to the provision on ultimate net loss and amended that provision to say, for purposes of calculating ultimate net loss and Converium's exposure under this treaty, Princeton may count no more than $500,000 in employer's liability. That likely would have been the end of this dispute. Well, that might have been... That might have been, in retrospect, you know, a clearer, easier way to do it. But on the other hand, why is, you know, their reliance on the Deamer Clause an unreasonable interpretation? Why is it unreasonable? Judge, it's because there is no linkage between a warranty. It was noted earlier that the warranties four in number address things like underwriting guidelines, classifications of risk, and things like that. There is nothing to link the warranty and the undertakings contained in those warranties to the calculation of loss. This is an effort where Converium could have done one of two things in defense of our claim. They could have said, you breached the warranty, there is no reinsurance coverage. They've never said that. There is no allegation that Princeton breached the warranty because on its face, we did not. That's what Judge Cooper concluded. Your explanation is beginning to sound reasonable, but I had the same sense after Mr. Novak spoke. Could I reserve two minutes for Sir Rebuttal then? The fact is, Judge, that if Converium wanted the result that they ask for here, they could have said, as I say, one of two things. You breached the warranty. There is no claim for breach of warranty. And in generic contract law, if you have a warranty or a representation and you believe that that provision is implicated by a particular event or claim, the natural consequence of that is a defense, in this case, that there was a breach of the warranty. But that's not what they say because they can't. The warranty was complied with, as Judge Cooper noted. In your view, what is the remedy for a breach of the warranty? Is the only remedy to sort of disown the contract? That implicates, Judge, the nature of the particular warranty. This is something that hasn't been briefed, whether it's a promissory warranty, whether it applies only to the circumstances as they exist when the warranty is made, or whether it is continuing. Those issues haven't been briefed here. But I think, Your Honor... I agree with you, all of us, but isn't one remedy for the breach? You know, to say, well, I want to hold them to the terms of the warranty. Why isn't that one of the available remedies? Judge, that might be one of the positions Converium could take, but for the fact that they have not contended, ever, before Judge Cooper or before this Court, that Princeton breached the warranty. It was not breached. And if I, in my remaining time, of the two choices they had, breach of warranty, which they could not and did not elect, or see if there's a way that they can bridge a gap between the warranty and ultimate net loss, that isn't there. There is no way for Converium to make that quantum leap to say a general contractual undertaking, a promise, made by Princeton in the warranty, now has a direct effect on an unrelated or an independent provision in the treaty. That being ultimate net loss. That defines how they pay and how much they pay. And that is unrelated to the warranty. Thank you, Mr. McGrath. Thank you very much. Mr. Novak. Five points I'd like to make very quickly. At the start, I'd like your response to Mr. McGrath's argument that, well, Converium never took the position that there was a breach of warranty. That's right. So then, in fact, aren't you sort of asking for like a remedy for a breach of that warranty? No, Judge. Then you're not reading it as a warranty. You're right, Judge.  as an absolute black and white bar warranty. Because the warranty doesn't read that way. If it's not a warranty and it's in the warranty clause, what is it? It's a warranty that if they issue a policy more than $500,000 of EO liability, the loss will be limited to $500,000. That's the warranty. The issuing of a policy with a million dollar EO limit, we don't think that's a breach as long as the limit in the warranty is enforced. Deem it limited to $500,000. He says there's nothing in the treaty that connects the warranty to the definition of ultimate net loss. And that's just wrong. Article three, the insuring agreement says the reinsurer agrees to reimburse the company on an excess of loss basis for the amount of ultimate net loss, which the company may pay as a result of losses, and then I'll skip some text, subject to the warranties of article five. So the insuring agreement clearly connects the warranties to the obligation to pay reinsurance. The warranties govern what goes into net loss and what we pay. He says that it's only by operation of New York law that the limit was exceeded in this case. Well, they should know New York law. They chose to go into the New York market and peddle New York workers' compensation insurance. If they're going to do that, they should know what their obligations are, and they shouldn't fault us for not telling them their own business. Finally, I didn't hear any explanation as to why, if a policy with a $1 million EL limit would result in $500,000 going into the treaty, an unlimited policy doesn't have that same result. It has to have it. That's the only way this makes sense. In interpreting the contract, does it matter if we look at New York law or New Jersey law? I don't think that substantively it matters. I think New Jersey law is a little bit more liberal at looking at extrinsic evidence, and I think if you look at the extrinsic evidence in this case, it's clear that our interpretation is right. Their broker agreed with our interpretation. Their vice president wrote various internal memorandums. This is Robert Michon. Well, again, that's not any there were no findings on that, right? Because Judge Cooper  That's correct. Right. That's correct. Are there factual issues that have to be determined? I think, Your Honor, that one possible factual issue that could be determined is that if you agree with my interpretation of the warranty, then the next issue is the settlement. I would argue that that settlement of the underlying tort claim is quite clear. It only settled out the state court tort case. It clearly envisioned the possible claim for workers' compensation benefits. So I don't think any of that should be allocated to employers' liability. Excuse me, to workers' comp. But, you know, I could see the judge down below did not address that issue. So I can see that that might be a factual issue. To be clear, you're talking about when you say that issue, the issue between the allocation between workers' comp and employers' liability. Yes. Yes. We think that none of that 4.4 million EL settlement should be allocated to workers' comp. But in theory, that, you know, could be a factual issue. Mr. Nodai, thank you very much. Thank you both. Thank you, Your Honor. Your helpful arguments will take the case under advisement.